UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | | |
|---|---|---|
| ANGEL M. FLORES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 2:24-cv-00046-MTS |
| | ) | |
| FRANK BISIGNANO, *Commissioner of the Social Security Administration*,[1] | ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court for review of the adverse decision of Defendant, the Commissioner of the Social Security Administration.[2] On March 11, 2022, Angel Flores ("Plaintiff") applied for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–434 and Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381–1385. (Tr. 251–59). Plaintiff alleged disability due to epilepsy, severe anxiety, post-traumatic stress disorder ("PTSD"), schizophrenia, bipolar disorder, depression, personality disorder, migraines, gastroparesis, and fatty liver disease, with an alleged onset date of July 1, 2021. (Tr. 291). In July 2023, following a hearing, an Administrative Law Judge ("ALJ") issued his decision finding that Plaintiff was not disabled under the Act. (Tr. 27). For the following reasons, the matter is reversed and remanded for further proceedings.

---

[1] Frank Bisignano is now the Acting Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Dudek is substituted as the proper defendant.

[2] Section 405(g) of Title 42 provides for judicial review of the SSA Commissioner's "final decision." After the ALJ concluded that Plaintiff was not disabled under the Act, (Tr. 27), the Appeals Council denied Plaintiff's request for review (Tr. 1–5); thus, the ALJ's decision stands as the Commissioner's final decision.

## I.  Standard of Review and Legal Framework

To be eligible for disability benefits, Plaintiff must prove that she is disabled under the Act. *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d), 1382c(a)(3)(A). A claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work" but also unable to "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* at §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Social Security Administration has established a five-step sequential process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a). Steps 1–3 require the claimant to prove: (1) she is not currently engaged in substantial gainful activity; (2) she suffers from a severe impairment; and (3) her disability meets or equals a listed impairment. *Id.* at § 404.1520(a)–(d). If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to Steps 4 and 5. *Id.* at § 416.920(e). At this point, the ALJ assesses the claimant's residual functioning capacity ("RFC"), "which is the most a claimant can do despite h[is] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009); 20 C.F.R. § 404.1545. The United States Court of Appeals for the Eighth Circuit has noted that the ALJ must determine a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of his symptoms and limitations. *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005). At Step 4, the ALJ must determine whether the claimant can return to her past relevant work by comparing the

2

RFC with the physical demands of the claimant's past relevant work. 20 C.F.R. § 404.1520(f). If the ALJ finds at Step 4 that a claimant can return to past relevant work, the claimant is not disabled. *Id.* If the ALJ finds at Step 4 that a claimant cannot return to past relevant work, the burden shifts at Step 5 to the Administration to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. *Id.* at § 404.1520(g).

The court's role on judicial review is to decide whether the ALJ's determination is supported by "substantial evidence" on the record as a whole. *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the ALJ's decision. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Even if substantial evidence would have supported an opposite decision or the reviewing court might have reached a different conclusion had it been the finder of fact, the Court must affirm the Commissioner's decision if the record contains substantial evidence to support it. *See McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if [the court] may have reached a different outcome"); *Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir. 1992) (explaining a court may not reverse merely because substantial evidence would have supported an opposite decision). The Eighth Circuit has emphasized repeatedly that a court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (quoting *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001)). Despite this deferential stance, a district court's

3

review must be "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision," *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998), and not merely a "rubber stamp," *Cooper v. Sullivan*, 919 F.2d 1317, 1320 (8th Cir. 1990).

## II.   The ALJ's Decision

The ALJ's decision in this matter conforms to the five-step process outlined above. At Step 1, the ALJ found Plaintiff had not performed substantial gainful activity ("SGA") since July 1, 2021. (Tr. 16). At Step 2, the ALJ found that, since January 1, 2014, Plaintiff had the severe impairments of major depressive disorder, generalized anxiety disorder, bipolar disorder, history of seizure disorder, arthralgia of the right knee, migraine headaches, and obesity. *Id.* At Step 3, the ALJ found that Plaintiff did *not* have an impairment or combination of impairments that met the severity of a statutorily recognized impairment. (Tr. 17). Thus, the ALJ found that Plaintiff had the RFC to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with postural and environmental limitations. (Tr. 20). Plaintiff can occasionally climb ramps and stairs; never climb ladders, ropes, and scaffolds; frequently stoop, kneel, crouch, and crawl. *Id.* She must avoid concentrated exposure to extreme heat, extreme cold, wetness, humidity, noise, vibration, fumes, odors, dusts, gases, poor ventilation. *Id.* Plaintiff must avoid all exposure to hazards such as moving machinery and unprotected heights. *Id.* Plaintiff can perform only simple, routine, and repetitive tasks that require only simple work-related decisions with few changes in the routine work setting, and she can have no more than occasional interaction with supervisors, co-workers, and the general public. *Id.* Following the expedited review process, the ALJ did not make a finding at Step 4 and, instead, proceeded to Step 5. (Tr. 25–26). At Step 5, the ALJ considered Plaintiff's age, education, work experience, and RFC and found that, prior to April 23, 2020, there were jobs in the national economy that Plaintiff could have performed, despite her limitations,

such as folder, cleaner, and sorter.  (Tr. 26–27).  Consequently, the ALJ concluded that Plaintiff was not disabled under the Act.  (Tr. 27).

**III.**     **Discussion**

Plaintiff argues that the ALJ improperly evaluated the medical opinion of APN Geoff Westhoff by failing to adequately discuss the supportability and consistency factors in explaining why he found Westhoff's opinion unpersuasive, as required by 20 C.F.R. §§ 404.1520c and 416.920c.  The Court agrees that the ALJ failed to comply with the opinion-evaluation regulations.

For claims filed on or after March 27, 2017, an ALJ evaluates medical opinions and prior administrative medical findings pursuant to 20 C.F.R. §§ 404.1520c and 416.920c.  These new rules provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources."  20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Rather, an ALJ is to evaluate the persuasiveness of all of the medical opinions and prior administrative medical findings in a claimant's case record by considering the (1) supportability of the opinion with relevant objective medical evidence and supporting explanations; (2) consistency with the evidence from other medical sources and nonmedical sources in the claim; (3) relationship with the plaintiff, including length, purpose, and extent of treatment relationship, whether it is an examining source, and frequency of examination; (4) specialization; and (5) other relevant factors.  20 C.F.R. §§ 404.1520c(a), (c), 416.920c(a), (c).

In evaluating the persuasiveness of a medical opinion, the most important factors for an ALJ to consider are supportability and consistency, and the ALJ must "explain how [he] considered the supportability and consistency factors . . . in [the] determination or decision."  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  An ALJ's failure to address either the consistency or

5

supportability factor in assessing the persuasiveness of a medical opinion requires reversal. *See Bonnett v. Kijakazi*, 859 F. App'x 19, 20 (8th Cir. 2021) (per curiam) (citing *Lucus v. Saul*, 960 F.3d 1066, 1069–70 (8th Cir. 2020) (remanding where ALJ discredited a physician's opinion without discussing the factors contemplated in the regulations, as failure to comply with the opinion-evaluation regulations was legal error)). "The ALJ's explanation need not be exhaustive, but boilerplate or 'blanket statements' do not satisfy the requirement." *Bibb v. Kijakazi*, 2:21-cv-70-ACL, 2023 WL 2707439, at *6 (E.D. Mo. Mar. 30, 2023) (quoting *Lucus*, 960 F.3d at 1069).

On January 27, 2023, APN Westhoff provided a Medical Source Statement indicating that Plaintiff has marked and extreme limitations in multiple areas of mental functioning. (Tr. 1567–70). He stated that Plaintiff had marked and extreme limitations in her ability to understand, remember, and carry out instructions because her short-term memory is very poor, which impairs her judgment and makes it difficult for her to carry out instructions; her bipolar disorder, depression, PTSD with panic attacks, social anxiety disorder, and borderline personality disorder disrupt her focus, concentration, time management, ability to deal with others, and memory; and her "anxiety, depression, and mood instability are debilitating" and "have adversely impacted her past attempts at employment." (Tr. 1567–68). He determined that Plaintiff had marked and extreme limitations in her ability to interact appropriately with others and respond appropriately to changes in the routine work setting for the following reasons: Plaintiff's poor short-term memory prevents her from completing tasks; "[a]ny criticism, no matter how constructive, causes [Plaintiff] anxiety and irritability and causes her to withdraw" and "isolate[] herself from others"; Plaintiff "is often homebound due to her depression and anxiety disorder"; "[u]nfamiliar people and surroundings cause her anxiety to increase"; "[s]he has panic attacks when around triggers that

6

cause flashbacks from her past trauma"; she "has difficultly controlling her anger in high stress situations"; and she "has difficulty interacting with others due to poor focus, anxiety, anger, and mood instability." (Tr. 1568). Westhoff explained that Plaintiff has a "short attention span and often experiences extreme fatigue and lacks concentration"; she "displays instability in her self-identity and self-worth" due to her borderline personality disorder, which "makes it difficult for her to maintain stable relationships with others" and "results in anger outbursts, irritability, and inability to accept constructive criticism"; and she "has a low tolerance for being around people in public and dealing with others." (Tr. 1568–69). He continued that when Plaintiff is depressed or anxious, she "has difficulty completing her activities of daily living, resulting in poor hygiene," and that she "has difficulty performing basic self-care including cleaning, eating appropriately, and exercising." (Tr. 1569). Finally, Westhoff opined that Plaintiff's impairments are likely to produce good days and bad days; cause her to miss more than 4 days of work per month; be off-task 25% or more of the typical workday; and cause her to take 6 or 7 unscheduled breaks during the workday due to symptoms such as panic attacks, anxiety, crying spells, fatigue, poor concentration, migraines, and anger. *Id.*

> The ALJ evaluated APN Westhoff's medical opinion as follows:
>
> This opinion is wholly unpersuasive. It is not consistent with the medical records as a whole, as set forth above, which routinely show grossly normal mental status examinations. Moreover, it is not supported by objective observations, and appears to be heavily dependent on the claimant's subjective recitations of her symptoms. Again, the claimant's reports of her symptoms are in excess of the objective findings during the relevant period, which routinely showed that the claimant was alert, oriented, and cooperative during mental and physical treatment encounters, as set forth above. Therefore, this opinion is not persuasive.

(Tr. 23).

Here, the ALJ's analysis of the supportability and consistency factors provided so little in the way of explanation that the Court cannot meaningfully review his determination that APN

7

Westhoff's opinion was unpersuasive. *See Hirner v. Saul*, 2:21-cv-38-SRW, 2022 WL 3153720, at *9 (E.D. Mo. Aug. 8, 2022) ("Section 416.920c(b) requires more than a conclusory statement as to the supportability and consistency factors so a reviewing court can make a meaningful assessment of a challenge to an ALJ's evaluation of the persuasiveness of various medical opinions."). With respect to the supportability factor, the ALJ found—without explanation—that Westhoff's opinion was "not supported by objective observations." (Tr. 23). The Court does not understand this finding given that most of Westhoff's sessions with Plaintiff took place in person at his office over the course of two years. (Tr. 1311, 1338, 1344, 1350, 1355, 1361, 1366, 1371, 1493, 1579, 1606, 1611, 1890). "[A]bsent some explanation," the Court "will not fill in the gaps for the ALJ." *Lucus*, 960 F.3d at 1069.

As to the consistency factor, the ALJ found that APN Westhoff's opinion was "not consistent with the medical records as a whole, which routinely show grossly normal mental status examinations." (Tr. 23). Due to the ALJ's failure to explain this finding, the Court cannot discern what "grossly normal" could mean in this context given that the record clearly shows that Plaintiff was diagnosed with paranoid schizophrenia and still hears voices and experiences visual hallucinations approximately six days per week, despite having been prescribed medication to treat her symptoms. (Tr. 48–49, 82, 95, 755–56, 763, 773, 847, 1239, 1314); *see Lucus*, 960 F.3d at 1069 (refusing to "fill in the gaps" for an ALJ "absent some explanation for finding an inconsistency where none appears to exist" (quoting *Reed v. Barnhart*, 399 F.3d 917, 921 (8th Cir. 2005))). While the ALJ briefly noted that Plaintiff "testified to seeing things and hearing voices" in his description of her testimony, (Tr. 21), he did not acknowledge that she was diagnosed with and treated for paranoid schizophrenia in his evaluation of APN Westhoff's opinion or anywhere else in the decision, *see Nelson v. Saul*, 413 F. Supp. 3d 886, 916 (E.D. Mo. 2019) (stating that

8

while an "ALJ is not required to explain all the evidence in the record[,]" "this does not give an ALJ the opportunity to pick and choose only evidence in the record buttressing his conclusion" (quoting *Taylor ex rel. McKinnies v. Barnhart*, 333 F. Supp. 2d 846, 856 (E.D. Mo. 2004))).  In addition to suffering from paranoia and hallucinations, the record shows that Plaintiff has been receiving extensive treatment for a number of apparently debilitating symptoms such as panic attacks, crying spells, mood instability, the inability to get out of bed or leave the house, and difficulty maintaining good hygiene, which appear to be the result of several mental disorders, including bipolar disorder, major depressive disorder, borderline personality disorder, PTSD, and social anxiety disorder.  *See, e.g.*, (Tr. 47–49, 54–57, 59–60, 62–70, 294, 349, 668, 703, 867, 1148, 1253, 1311, 1338, 1353, 1381, 1385, 1491, 1574, 1582, 1693, 1886).

      The ALJ appears to have relied heavily on occasional normal findings that Westhoff made in certain areas of Plaintiff's mental functioning during her mental status examinations, but the Court does not understand this to be inconsistent with APN Westhoff overall opinion that Plaintiff has many marked and extreme mental limitations, especially when Westhoff's examinations contain numerous findings of abnormal behavior, activity level, affect, insight, and judgment.  (Tr. 756, 761, 765, 1227, 1232, 1237, 1242, 1312, 1339, 1345, 1351, 1356, 1362, 1367, 1372, 1494, 1580, 1607, 1612, 1891); *see Andler v. Chater*, 100 F.3d 1389, 1393 (8th Cir. 1996) ("It is inherent in psychotic illnesses that periods of remission will occur, and that such remission does not mean that the disability has ceased.  Indeed, one characteristic of mental illness is the presence of occasional symptom-free periods." (citation modified)); *cf. Nelson*, 413 F. Supp. 3d at 916 (quoting *Taylor*, 333 F. Supp. 2d at 856)).  And it is unclear from the record whether the ALJ considered other relevant factors such as APN Westhoff's specialization in psychiatry, the length and extent of the treatment relationship, and that he treated Plaintiff as part of a larger

9

community-support team that included a caseworker who visited Plaintiff at her home once per week to provide support services.  (Tr. 1376, 1380, 1384, 1388, 1392, 1396, 1400, 1404, 1407, 1411, 1414, 1417, 1420, 1423, 1426, 1430, 1434, 1448, 1486, 1489, 1572, 1576, 1585, 1589, 1592, 1596, 1599, 1603, 1878, 1882, 1886, 1895); *see Bland v. Saul*, 2:18-cv-95-NAB, 2020 WL 1929786, at *8 (E.D. Mo. 2020) (reversing the ALJ's decision where the ALJ failed to consider how the plaintiff's "structured and homebound lifestyle affects the severity of her symptoms" (citing 20 C.F.R. Part 401, Subpt. P, App. 1, 12.00(F)); 20 C.F.R. Part 401, Subpt. P, App. 1, 12.00(F) (providing that in cases involving chronic mental disorders, overt symptomatology may be controlled or attenuated by psychosocial factors such as highly structured and supportive settings that may greatly reduce the mental demands on the claimant).

In light of these records, the Court finds the ALJ's statement that Plaintiff's mental status evaluations were "grossly normal" is vague, unclear, and insufficient to meet §§ 404.1520c(b)(2) and 416.920c(b)(2)'s requirement to specifically explain how he considered the supportability and consistency factors in evaluating the persuasiveness of APN Westhoff's medical opinion.  *See Bibb*, 2023 WL 2707439, at *6 ("The ALJ's explanation need not be exhaustive, but boilerplate or 'blanket statements' do not satisfy the requirement." (quoting *Lucus*, 960 F.3d at 1069)); *Hirner*, 2022 WL 3153720, at *9 ("Section 416.920c(b) requires more than a conclusory statement as to the supportability and consistency factors so a reviewing court can make a meaningful assessment of a challenge to an ALJ's evaluation of the persuasiveness of various medical opinions."); *Martini v. Kijakazi*, 4:20-cv-1711-CDP, 2022 WL 705528, at *4 (E.D. Mo. Mar. 9, 2022) ("The ALJ's sprinkling of the words 'support' and 'consistent' in h[is] cursory treatment of the opinions is insufficient to satisfy the Regulation's requirement that the ALJ 'explain' how []he considered these factors in determining the persuasiveness of a medical opinion.").

To the extent the ALJ relied on the opinions of the state agency's consultants in finding that APN Westhoff's opinion was not persuasive, the Court finds that the ALJ's analysis of the consultants' opinions consists of insufficient "boilerplate" and "blanket statements." *See Bibb*, 2023 WL 2707439, at *6 ("The ALJ's explanation need not be exhaustive, but boilerplate or 'blanket statements' do not satisfy the requirement." (quoting *Lucus*, 960 F.3d at 1069)). Further, unlike APN Westhoff, none of state agency's consultants examined Plaintiff or had access to Westhoff's January 27, 2023, medical opinion. *See McCoy v. Astrue*, 648 F.3d 605, 616 (8th Cir. 2011) ("[T]he opinion of a nonexamining consulting physician is afforded less weight if the consulting physician did not have access to relevant medical records, including relevant medical records made after the date of evaluation." (citing *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010))). And contrary to the ALJ's assertion, none of the consultants provided meaningful explanations for their opinions regarding Plaintiff's mental RFC. (Tr. 88) (reciting the definitions of the regulations' four broad areas of mental functioning without applying them to any facts in Plaintiff's medical records); (Tr. 101) (same); (Tr. 116) (same); (Tr. 129) (same). Thus, the Court finds that the ALJ's evaluation of the consultants' opinions fails to meet §§ 404.1520c(b)(2) and 416.920c(b)(2)'s requirement that he specifically explain how the supportability and consistency factors were considered. *See Hirner*, 2022 WL 3153720, at *9 ("Section 416.920c(b) requires more than a conclusory statement as to the supportability and consistency factors so a reviewing court can make a meaningful assessment of a challenge to an ALJ's evaluation of the persuasiveness of various medical opinions.").

Because the Court concludes that remand is necessary due to the ALJ's failure to comply with the opinion-evaluation regulations, the Court need not address Plaintiff's remaining arguments regarding the ALJ's listing and RFC determinations. The Court notes, however, that in

11

determining whether the severity of Plaintiff's mental impairments meets the criteria of Listings 12.04 and 12.06, the ALJ did not provide a meaningful explanation or cite any record evidence that would support his finding that Plaintiff's mental impairments, alone or in combination, resulted in no more than moderate limitations in all four areas of mental functioning.[3]  (Tr. 19).  In light of the record evidence indicating that Plaintiff has been receiving extensive treatment for auditory and visual hallucinations, paranoia, panic attacks, crying spells, mood instability, outbursts, and severe depression arising from several mental disorders, (Tr. 47–49, 54–57, 59–60, 62–70, 294, 349, 668, 703, 867, 1148, 1253, 1311, 1338, 1353, 1381, 1385, 1491, 1574, 1582, 1693, 1886), it appears that Plaintiff's mental impairments meet the criteria of Listings 12.04 and 12.06.  On remand, the ALJ should consider all of the relevant record evidence in assessing whether Plaintiff's mental impairments meet Listings 12.04 and 12.06 and cite the portions of the record that support his findings.

## CONCLUSION

For the foregoing reasons, the Court finds that the ALJ's decision is not supported by substantial evidence on the record as a whole.

Accordingly,

---

[3] In the listing analysis, the ALJ references Plaintiff's purported ability to care for her boyfriend in support of his findings that she has no more than moderate limitations in her abilities to concentrate, persist, maintain pace, adapt, and manage herself.  (Tr. 19).  In the subsequent RFC analysis, the ALJ indicates that he drew this inference from the caseworker's July 22, 2022, progress notes from a face-to-face visit with Plaintiff at her home.  (Tr. 25) (citing Tr. 1390).  Rather than providing support for the ALJ's assertion that Plaintiff "is able to complete activities such as caring for her boyfriend," (Tr. 19), the notes indicate that Plaintiff was "identif[ying] her current stressors" for the caseworker when she stated that she had been having "a hard time" trying to care for her boyfriend during a period of time when he was in significant pain. (Tr. 1390).  In any event, the record appears to provide more support for finding that Plaintiff's boyfriend usually takes care of her.  *See* (Tr. 300–01) (explaining that Plaintiff is homeless and stays at her boyfriend's home when he is there); (Tr. 51) (testifying that her fiancé "does pretty much all of" the grocery shopping); (Tr. 69–70) (testifying that her fiancé reminds her to bathe and drives her to her appointments with APN Westhoff).

12

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED**.

A separate Judgment shall accompany this Memorandum and Order.

Dated this 30th of September 2025.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE